23  383
43  540
23  383
44  389

## J. T. BROCK v. J. W. COTTINGHAM AND W. V. COTTINGHAM.

LOST PAPERS; *Diligence; Secondary Evidence.* Before parol, secondary evidence of the contents of any paper can be used, the testimony of the person who is shown to have been the last custodian of such paper, or who is presumed in law or from the circumstances of the case to be such custodian, must be introduced to show the loss or destruction of such paper, if such testimony can be produced.

*Error from Montgomery District Court.*

ACTION of replevin, brought by *Cottingham* and another, against *J. T. Brock* and Uri Coy. Trial at the March Term, 1879, of the district court, and judgment for the plaintiffs. *Brock* brings the case here. The opinion contains a sufficient statement of the facts.

*T. J. Hudson, B. M. Short*, and *C. M. Foster*, for plaintiff in error:

It was error to reject the evidence as to the substance of the execution. The testimony of Hudson and Brock, with

the record of the district court of Montgomery county, was undoubtedly sufficient evidence of the issuing of the execution, and of the loss of the original, so as to permit secondary evidence of its contents. (31 N. Y. 115; 20 Ala. 288; 6 Vt. 395; 49 Cal. 671.) The rule requiring a party to produce the best evidence only holds when such production is possible, and on its being shown that for some reason, not within the control of the party, the best evidence cannot be produced, secondary may be given. (6 Bosw. 213.) See also 6 Ala. 314, 589; 6 Binney, 59; 7 Pet. 99; 16 Johns. 196. On the question of diligence and secondary evidence, see 20 Wall. 125; 22 Conn. 326; 13 Me. 41; 34 id. 572; 27 Ga. 68. The English courts hold that there is no distinction as to the competency of secondary evidence. In *Guthrie v. Merrill*, 4 Kas. 187, and *Shepard v. Pratt*, 16 Kas. 209, there was a total want of diligence in procuring the original papers, or accounting for their absence.

*Geo. & Jos. Chandler*, and *Wm. Dunkin*, for defendants in error:

The secondary evidence offered, of the witness T. J. Hudson, to show the substance of the contents of the execution, is incompetent proof, and the court rightly sustained the objections of the defendants in error thereto. If the plaintiff in error desired, or was obliged to resort to secondary evidence, he should have used the best proof of which the nature of his case would admit. (20 Wall. 226, 246.)

This execution, with the return of the plaintiff in error indorsed thereon, is a part of the records in that case, and was traced into the hands of the clerk of the district court of Wilson county, the proper custodian thereof. He is the proper person to testify of its loss, or destruction. It having been traced into his possession, and he being the legal custodian thereof, he is the only person who could properly lay the foundation for the introduction of secondary evidence. 2 Heisk. (Tenn.) 653; 6 Vt. 395; 12 Mo. 59; 30 Ala. 113; 1 Grant (Pa.), 175; 30 Cal. 360; 24 Pa. St. 486; 37 Miss. 434; 4 Kas. 187; 7 Wis. 131.

Can the plaintiff in error avoid this by using one of his attorneys, who may be willing to testify to the offer, in this case? (38 Me. 456.) When was this search made? How long did he search? (*Shepard v. Pratt*, 16 Kas. 212.) For aught that appears from this record, it may have been made at the very time when the execution was in the hands of the plaintiff in error. This search, if by the proper custodian, must be shown to have been recently made before the time when the evidence offered is to be used. He could not make it a year before this trial. (13 Pa. St. 641.) The evidence of the officer having the custody of this execution is the best evidence of its whereabouts. Being the best, it is the *only* evidence which the plaintiff in error ought to be permitted to use on this point. Where the evidence is such as to leave the mind in doubt whether by further search the record might not be found, parol evidence of its contents will not be admitted. 2 Gill. & J. (Md.) 254; 18 Miss. 549; 8 N. J. (3 Halst.) 275; 4 Iowa, 251; 21 How. (U. S.) 170.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, brought by J. W. Cottingham and W. V. Cottingham against J. T. Brock and Uri Coy. The defendants answered jointly, filing a general denial. Their defense was conducted jointly, and by the same counsel, and judgment was rendered against them jointly, although it is clear from the proceedings and the evidence that all of Coy's sympathies were with the plaintiffs. Brock alone brings the case to this court; and this is right, for Coy is undoubtedly perfectly satisfied with the judgment of the court below. But Brock should have made Coy a party defendant, so that Coy could present his views and desires to this court. We can hardly reverse the judgment as to Coy, when he is not a party in this court and we have no jurisdiction over him. But for the purposes of this case we shall consider the case as rightly brought to this court, and shall proceed to consider the other questions involved in the case as though we had entire jurisdiction over

all the parties. Numerous questions are raised; but only one, as we think, demands our special attention, and that one is, whether certain evidence offered by the defendant Brock to prove the contents of the execution under which he claims the property, was admissible on the trial. That Brock was sheriff of Montgomery county, where this action was brought and tried; that Coy owned the property; and that Brock claimed to hold it under a valid execution against Coy, are admitted facts in the case. And it was sufficiently shown that Brock held an execution *of some kind;* that it was issued to Brock by the clerk of the district court of Wilson county; that it was properly registered in the clerk's office of the district court of Montgomery county; that Brock seized the property in controversy under such execution, and held the property by virtue thereof; and then, that he returned the execution to the clerk of the district court of Wilson county, where the return indorsed on the same was duly recorded. But what afterward became of the execution, is not shown.

The plaintiffs below claimed to hold the property under a chattel mortgage and a bill of sale, and they made out such a clear, *prima facie* case of right, that we do not think that it is necessary to discuss their side of the question. Even if their claim might be slightly irregular or fraudulent, still Brock cannot complain unless he can show that he himself has *some* interest in the property. If he did not have any valid or sufficient execution, or in other words, if he was a mere wrong-doer in seizing said property, then he cannot complain of the infirmities of the plaintiffs' claim, unless such claim was so infirm as to be absolutely void as against all persons, which was not the case. And this is especially true, as the court below evidently adjudged the property to go just where the owner of the property, Coy, wanted it to go. Then did Brock have any valid or sufficient execution? He did not introduce or offer to introduce any execution in evidence; nor did he offer to introduce any copy of any execution in evidence; he did not even offer to prove the *verbatim* contents of any execution. He however offered to

prove by parol evidence the substance of the contents of the execution, under which he made his claim to the property. This, of course, would have been sufficient if he could not have obtained any better evidence. The court however excluded this proffered evidence, on the ground that Brock had not shown and did not show that he could not procure any better evidence. Did the court err in this? This is the principal question involved in this case. In order to lay the foundation for the introduction of secondary evidence as to the contents of said execution, Brock introduced the witness T. J. Hudson, who testified as follows:

"I saw the execution. I can't say just when I first saw it. I brought the execution down and gave it to Brock in April last. I went with Brock to make the levy. I am one of the attorneys for defendant Brock in this case. As such attorney, I called upon A. E. Smith, clerk of the district court for Wilson county, Kansas, for the execution direct from said court to the defendant Brock in the case of Wilson County Bank v. L. A. Davis, Uri Coy and J. W. Craig. The said execution could not be found by Smith among the files of papers kept by said clerk in his said office of district clerk. That he (Hudson) had himself several times searched said office thoroughly in company with the clerk for said execution. That he (witness) looked in every place that said paper was likely to be kept or found, and had repeatedly called upon the clerk for the same or a copy thereof, but could not obtain either, because he couldn't find it; that in company with the clerk of said court he (witness) had examined the safe and searched the papers kept therein, and had looked among the papers in the case of the Wilson County Bank v. L. A. Davis, Uri Coy and J. W. Craig, on file in said court, and had thoroughly examined the papers required to be kept by said clerk in his said office of said Wilson county district court; that he (witness) was well acquainted with said office and the places in which papers required to be kept in said office were by said clerk kept, being a resident practicing attorney at Fredonia, the county seat of said Wilson county; that said clerk had no copy of said execution in his said office, but did have the return thereon recorded, a copy of which was in court here, properly certified to by the clerk. I have no copy of the execution. I cannot state the exact language of the execution.

"Q. You may state the substance of it.

"(Question objected to, as calling for secondary evidence, without the proper grounds being laid therefor; that the execution itself was the best evidence; that the evidence called for was incompetent, irrelevant, and immaterial, which objections were by the court sustained, to which ruling the defendant excepted.)"

Did the court err in excluding this secondary evidence of the contents of said execution? We think not. It must be remembered that this execution was an important paper in this case. Brock's entire case depended upon it. Without it, Brock had no rights, and therefore the most diligent search should have been made for it, and by all means Brock should have procured the original paper itself, or a duly-certified copy thereof. No one knew that the paper was lost. No one knew that it had been destroyed. There was no evidence showing that any paper in said clerk's office had ever been destroyed, or lost, or carelessly kept. No fire had ever occurred among the papers, and nothing else, except the search of T. J. H., was shown from which it might be presumed, or even supposed, that the paper might have been lost or destroyed, and it was a paper that was not likely to be lost or destroyed; besides, the proper custodian of the paper was not called as a witness. His evidence, we think, was indispensable under the circumstances of this case. Of course, we think that the evidence of T. J. H. regarding his search for the paper was competent, but we do not think it was sufficient. Before secondary evidence of the contents of any instrument can be introduced, the party seeking to introduce the same must "show that he has in good faith exhausted, in a reasonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest and which are accessible to him." (1 Greenl. Ev., § 558.) Mr. Greenleaf further says: "If it [the paper supposed to be lost] belonged to the custody of certain persons, or is proved or may be presumed to have been in their possession, *they* must in general be called and sworn to account for it if they are within reach of the pro-

cess of the court; and so, if it might or ought to have been deposited in a public office or other particular place, that place must be searched. If the search was made by a third person, he must be called to testify respecting it, and if the paper belongs to his custody, he must be served with a *subpœna duces tecum*, to produce it." (Id.) Mr. Wharton says that "to satisfy the court which has the determination of the question of admissibility, search in probable places of deposit must be proved, and *the parties last in possession* of the paper, if possible, be examined." (1 Wharton Ev., § 147.) In the case of *Anderson v. Maberry*, 2 Heisk. (Tenn.) 655, Chief Justice Nicholson, for the court, says: "Before secondary evidence can be admitted as to the contents of a lost paper, the evidence of the person who was the proper custodian of it as to its loss must be adduced." Also upon this question, see the following cases: *Apperson v. Ingham*, 12 Mo. 59; *Bogan v. McCutchen*, 48 Ala. 493; *Hanson v. Kelly*, 38 Me. 456; *Dunn v. Choate*, 4 Tex. 14; *Brown v. Tucker*, 47 Ga. 485; *Harper v. Hancock*, 6 Ired. (N. C.) L. 124; *Tyre v. Magness*, 1 Sneed (Tenn.), 276; *Simpson v. Dall*, 70 U. S. (3 Wall.) 460; contra, *Hill v. Fitzpatrick*, 6 Ala. 314.

In the consideration of this question, we must exclude everything that the clerk may have said to the witness T. J. H., and all inferences drawn therefrom by the witness. All that the witness could know with reference to the matter was, that he made a search for the paper, along with the clerk, and did not find it. He could not know that the clerk did not know where the paper was. The clerk may have placed it in some unusual place, or may have lent it, or may have sent it out of the office to be copied. Nor could the witness know that the clerk could not have furnished him with a duly-certified copy of the paper. And such a copy would have been amply sufficient. (Civil Code, §§ 372, 387*a*, 328; Comp. Laws of 1879, pp. 650, 652, 645; Laws of 1870, p. 174, ch. 87, § 12.) Besides, it was not shown when this search was made: neither the hour, nor the day, nor the week, nor the month, nor the year was given. And Mr.

Wharton says the search "must be recent." (Wharton Ev. § 147.)

In this case, as the paper was last known to have been in the custody of the clerk of the district court of Wilson county, and as·the suit was pending in the district court of Montgomery county, the defendant Brock should have demanded of the clerk of the district court of Wilson county, after first tendering the proper fees, a duly-certified copy of said paper; and if the clerk had then failed for any reason to furnish such copy Brock should then have taken his deposition in Wilson county. And the subpena to him should have been a *subpœna duces tecum*, requiring him to appear and bring the paper. Or if the paper had still been in the hands of the clerk, probably a still better remedy would have been *mandamus* to compel him to give such copy.

We do not think that the evidence of T. J. H. was sufficient to authorize the introduction of parol secondary evidence of said execution. We do not however wish to say that it is always necessary to introduce the evidence of the person who was last known to have been the custodian of such paper. But we think this is the general rule; and, in·cases like the present, it should always be the rule. There might be cases where some other person than the legal custodian or the actual custodian would know more about the papers than the custodian himself. And the paper in question might be of but little importance, and the necessity for its use might arise incidentally only during the trial, and it might then be shown that the place where the paper had been kept was destroyed by fire, or that thieves or burglars had abstracted everything from such place, and various other things might be shown that would render it highly probable that the paper had been destroyed or lost. In all such cases, the rule of strict proof of loss or destruction might to some extent be relaxed. Of course, where the last known or presumed custodian is dead, or beyond the reach of process, his evidence must be dispensed with. After examining the question carefully, we think we may state it as a general rule,

that before parol secondary evidence of the contents of any paper can be used, the testimony of the person who is shown to have been the last custodian of such paper, or who is presumed in law or from the circumstances of the case to be such custodian, must be introduced to show the loss or destruction of such paper, if such testimony can be procured. And if we are correct in this, then the court below did not err in excluding said secondary evidence. And without such secondary evidence the defendant Brock could have no right to recover in this action, upon the evidence actually introduced.

The point made with reference to the want of possession by Brock, is not tenable.

The judgment of the court below will be affirmed.

All the Justices concurring.