## G. S. ANDERSON, *et al.*, v. RELEAF KENT.

<div style="float:right">

| 14 | 207 |
|----|-----|
| 62 | 521 |

</div>

1. HOMESTEAD; EVIDENCE; *Declarations of Party in Possession.* Where the question is as to the existence of a homestead interest, declarations made in disparagement thereof by the party alleged to have possessed it, and made during the time of the alleged possession, are competent evidence in favor of one claiming adversely.

2. ——— *Abandonment before Sale.* Where A. claimed title by virtue of a deed from B. of certain premises which had theretofore been the homestead of B. and his family, and of which the legal title was in B., and where it appears that B.'s family consisted only of himself and wife, and that more than a month prior to the deed B.'s wife had left the place and abandoned him with the intention of never returning to either; that three weeks before B. had sold the furniture in the house to the grantee in the deed, and that on the day of its execution B. had surrendered possession and left the city, *held*, that in a contest between the grantee in the deed and subsequent judgment-creditors of B., this court will not reverse a finding to the effect that the homestead interest of B. and his wife had so far ceased prior to the execution of the deed as to make it a valid conveyance.

3. EJECTMENT; *Second Trial; Practice; Laches.* Where after a judgment in an action of ejectment the defeated party filed his motion for a new trial under section 306 of the code, which was properly over-

ruled, but made no demand for a second trial under section 599, *held,* that it was too late for him to insist for the first time in this court that he was entitled to a second trial as a matter of right under said last-cited section.

*Error from Miami District Court.*

EJECTMENT for a lot in the city of Paola, brought by *Mrs. Releaf Kent* as plaintiff against *Anderson & Potts* as defendants. The defendants were in possession of the premises, and claimed title thereto by sheriff's deed, obtained in an action by them against Erastus Renfro and Betsy J. Renfro, who were indebted to *Anderson & Potts* upon joint contract. The facts and proceedings are fully stated in the opinion. *Mrs. Kent,* at the December Term 1873, had judgment for the recovery of the possession of the premises, and the defendants bring the case here.

*W. R. Wagstaff,* and *J. A. Hoag,* for plaintiffs in error:

1. Defendant in error claims title by deed bearing date June 18th 1872, and signed by Renfro alone. Renfro was a married man, and at that date the lot in controversy was his homestead. Hence said deed of June 18th is null and void, and conveys no title, and consequently cannot be the foundation for an action of ejectment: Const., art. 15, § 9; *Morris v. Ward,* 5 Kas., 239; *Dollman v. Harris,* 5 Kas., 597; *Anderson v. Anderson,* 9 Kas., 112; *Poole v. Gerrard,* 6 Cal., 71. The sheriff's deed conveyed to Anderson & Potts all the interest that Renfro and wife had in the premises on the 26th of June, at which time the homestead right had ceased by reason of the abandonment of both Renfro and wife. It is on this ground of voluntary abandonment that Anderson & Potts claim to have acquired a lien on the premises. This lien was acquired eight days after the execution of the pretended deed to Mrs. Kent, and eight days after the premises were abandoned by Renfro. The deed to Mrs. Kent is void because at the date of its execution and delivery Renfro was in the actual possession of the premises, and on the same day he declared to his creditors that he held said premises as a

homestead. If Renfro had not declared the premises to be his homestead, occupancy is presumptive evidence of the appropriation of a place as a homestead, and is notice to all: 4 Cal., 23, 268.

2. The court. erred in admitting in evidence the letter signed ."Bettie," which was objected to by plaintiffs in error. The letter contains communications made by husband and wife to each other during the marriage, and the objection that it was *incompetent* went to that point; Civil Code, § 323. There was no proof that said letter was in the handwriting of Betsey J. Renfro, nor that the direction upon the envelope was in her handwriting; and we submit that the evidence, until such proof be made, is *incompetent*. 1 Greenl. Ev., § 577; 2 Wait's Law and Prac., 365, 366.

*Simpson & .Brayman,* for defendant in error:

Mrs. Renfro is not here asserting the conveyance to defendant in error to be void, and it is respectfully submitted that she is the only person that can raise that question. The constitution and homestead-exemption laws confer a personal privilege, which the householder may waive or not, at his option. (*Chamberlain v. Sayell,* 3 Mich., 448.) The statutory provision, that no conveyance of a homestead shall be valid unless the wife joins therein, means only that a conveyance ·made by the husband alone, shall not affect the joint right to enjoy the land as a homestead. (*Gee v. Moore,* 14 Cal., 472.) Therefore a conveyance by the husband alone, passes the title subject only to that right. After an abandonment by a removal, without an intent to return, the husband can ·convey the former homestead without his wife joining. (*Guiod v. Guiod,* 14 Cal., 506.) The husband without the co-operation of the wife, may convey the entire property in which the right of the homestead exists, *subject to that right,* and the purchaser under such conveyance of the husband alone, will hold the estate subject to the homestead right, wherever properly demanded by the party entitled thereto. (*Atkinson v. Atkinson,* 37 N. H., 434; *Davis v. Andraos,* 30 Vt., 678.) The limi-

tation in the homestead law, that the husband cannot convey the homestead without the wife's joining, does not avoid the conveyance by the husband alone, so as to give a lien to a subsequent attaching-creditor, whose rights are not affected by the law. (*Home v. Adams,* 28 Vt., 541.)

The opinion of the court was delivered by

BREWER, J.: Defendant in error recovered a judgment in ejectment against plaintiffs in error. It was admitted on the trial below that the title to the property in dispute had been, prior to the conveyances offered in evidence, in one Erastus Renfro. Mrs. Kent offered in evidence a deed from said Erastus Renfro, dated June 18th 1872, and this was her title. Plaintiffs in error offered certain judicial proceedings against Erastus Renfro and wife, commencing with an attachment levied on said premises on June 26th 1872, and ending in a sheriff's deed; and this was their title. There was a general finding for plaintiff, Mrs. Kent. It is claimed that the deed to Mrs. Kent was void, because it was an attempted conveyance of a homestead in which the wife did not join. Was it a homestead at the time of the conveyance? Renfro's family consisted of himself and wife, and together they had occupied the premises as their homestead until sometime in May 1872, when the wife left, and, as appears from a long letter of hers to her mother, with the intention of not returning. The furniture remained in the house, though sold some three weeks prior thereto to Mrs. Kent, and Renfro continued to occupy it until the day or the day before the execution of the deed. ·On the 17th of June he was in Johnson county, at the home of Mrs. Kent, and together they returned to Paola, reaching the house on the morning of the 18th. On that day, in the morning, he executed the deed, and left town on the evening train. On this same morning he was asked by one of the defendants to give them a mortgage on the place to secure their debt, but he declined, saying it was his homestead, and that he thought they ought not to ask him to mortgage his homestead. It is entirely clear that when Mrs. Ren-

*Abandonment of homestead.* fro left in May she abandoned all interest in the homestead. She not only declares in her letter 'her separation from her husband, but also adds: "I have not taken anything with me, not even all my clothes. If I can make a living for myself he can certainly get along with the property," etc. And it may also be reasonably inferred from the circumstances, that the abandonment by him of the homestead and the execution of the deed were contemporaneous. We do not mean to decide that he had or had not a homestead interest after the abandonment by his wife; but if he had, it ceased with the execution of the deed and his surrender of the property. It does not appear whether the key and the possession were surrendered before or after the execution of the deed. Probably under the circumstances of this case it is immaterial which. There was clearly enough testimony to support a finding of the abandonment of the homestead before the execution of the deed. Neither Renfro nor his wife are contesting the validity of this conveyance; and if they are satisfied with it, a subsequent judgment-creditor must make a clear case before he can ask a court to set it aside.

A second alleged error is in the admission of the letter from Mrs. Renfro to her mother, Mrs. Kent. The objections made to it were, that it was "incompetent and irrelevant." The letter is quite lengthy, was written after she left her husband, and before the execution of the deed, and gives the reasons *Declaration of party, in disparagement of title.* of her separation from her husband, and her intentions as to the future. It is, so far as this case is concerned, a declaration by one said to have a homestead-interest in disparagement of that interest, which, by well-settled rules, is always competent. If there were objections to any particular statements in the letter they should have been pointed out, and are not covered by a general objection to the whole of the letter, some portions of which were unquestionably competent and relevant.

It is said that the court erred in not giving a second trial.

No demand was made for a second trial under section 599 of
the code, only a motion for a new trial under section
306. This disposes of the matter. It may also
be noticed that this was really the second trial. The record
shows that at a prior term a trial was had, a jury impanneled,
the plaintiff's testimony offered, a demurrer to the evidence
sustained, and the jury discharged from the further consid-
eration of the case. It fails to show the entry of a formal
judgment, but it does show that plaintiff appeared and moved
for another and a new trial, which motion was sustained, and
the case continued to the next term.

*3. Ejectment; second trial; laches.*

The judgment will be affirmed.

All the Justices concurring.