CONRAD R. STINDE, Plaintiff in Error, *v.* WILHELMINA BEHRENS ET AL., Defendants in Error.

### December 10, 1878.

1. Property exempt from execution under the Homestead Act is no longer exempt when it ceases to be a homestead.

2. Homestead laws have no extra-territorial force. Where one in debt sells his homestead in Kansas and gives the proceeds to his wife, who in her own name purchases real estate in Missouri, the latter property, not being a homestead, is liable for the husband's debts existing at the date of the purchase; and this liability is not affected by the fact that the purchase was made with the proceeds of property in which the wife had had a temporary and conditional homestead interest in Kansas.

ERROR to St. Louis Circuit Court.

*Reversed and remanded.*

DEXTER TIFFANY and FINKELNBURG & RASSIEUR, for plaintiff in error: Laws of exemption and homestead have no extra-territorial force, and proceeds of property exempt from execution in another State are not on that account protected from execution when found in this State. — *Boykin* v. *Edwards*, 21 Ala. 261. When property is sold with intent to leave the State, the proceeds are not protected by the statute. The intent to leave the State withdraws therefrom the protection of the statute. — *The State* v. *Davis*, 46

Mo. 108; *Jordan* v. *Godman*, 19 Texas, 275; *Trawick* v. *Harris*, 8 Texas, 312; *Tenney* v. *Sly*, 44 Ind. 269; *Orr* v. *Box*, 22 Minn. 485. Rights of homestead and exemption are of favor, and are not vested rights. — *Sparger* v. *Cumpton*, 54 Ga. 359. And affect only the remedy. — *Helfenstein* v. *Cave*, 3 Iowa, 287; *Nuvall* v. *Hayden*, 8 Iowa, 140; *Morgan* v. *Neville*, 74 Pa. St. 52. A wife has only a privilege, and has no estate in a homestead in Kansas; when she consents to a sale, her whole interest is gone, no matter what motive she had in consenting. — *Jenness* v. *Cutter*, 12 Kan. 500.

T. G. C. DAVIS, for defendants in error: Homestead laws should be liberally construed, for the purpose of securing to families homes protected from creditors of the heads of such families. — *Vogler* v. *Montgomery et al.*, Nev. Rep.; *Cox* v. *Wilder*, 2 Dill. 46; *McFarland* v. *Goodman et al.*, 13 Am. L. Reg. N. S. (O. S., vol. 22) 697; *Duester* v. *Bill et al.*, 11 Mo. 114; *Cromb* v. *Murphy*, 24 Wis. 365.

HAYDEN, J., delivered the opinion of the court.

This is a bill to divest title to certain land out of Wilhelmina Behrens, wife of the other defendant, and vest the title in the plaintiff, on the ground that the land was conveyed in fraud of the plaintiff, a creditor of the husband. The plaintiff claims under a sheriff's deed conveying the interest of the husband in the land. In April, 1875, the plaintiff recovered a judgment upon which the execution issued by virtue of which the property was sold. In September, 1874, the defendants, being husband and wife, were living in the State of Kansas, upon a homestead property which was in the husband's name, and which he had held as such from the year 1871, having paid for it with his own money. Behrens had made an assignment for the benefit of his creditors in August, 1873, but had retained this homestead as exempt. In 1874, and while owing to the plaintiff the debt on which the latter obtained the judgment

already described, Behrens, intending to leave the State of Kansas, sold the homestead property, with his wife's consent, and for it received $600, which he paid to his wife, and the real estate now in controversy, taking a deed for the latter in his wife's name; the deed, however, containing no words indicating that she held the land as her separate property. Behrens and his wife then moved into Missouri, and in October, 1864, occupied the property which was subsequently levied upon as stated.

The homestead law of Kansas was put in evidence before the referee to whom the case was referred, and upon his report and recommendation the bill was dismissed by the court below.

We think that the view taken by the defendants involves not only a misconception of the homestead law of Kansas, but attempts to give that law an operation which, independently of any question of construction, it cannot have in Missouri. The argument of the defendants tacitly assumes that the wife had an estate in the property which was used in Kansas as a homestead, and supposes that this estate was independent of the limitations imposed by the homestead law. It seems further to assume that the law of Kansas had an extra-territorial effect, and operated upon the real estate in Missouri which was conveyed to the wife. If the Kansas property had been exchanged in Kansas for money or goods in Missouri, it could be urged with as much truth as now that the consideration for the transfer was exempt property, upon the faith of which creditors did not contract and to which they had no claim. Yet it is obvious that money or goods here would be governed by the *lex fori*, and that the creditors of the husband could attach here upon cause shown, or seize upon execution. But if an immunity created by the statute of Kansas would not exist in reference to money or goods in Missouri, it is difficult to see why it should attach itself to the real estate here involved.

We may suppose a State with no homestead law, and

whose policy as shown by its execution laws was to make all property, without exception, subject to process of the creditor, and another State which, like Kansas, imposed, so far as value is concerned, no limit to the homestead exemption. Under the application of such a rule as that now contended for, the policy of the former State, as well as its express laws, might be defeated by the laws of another State. But laws relating to the exemption of property from execution are peculiarly laws of the forum, and of this kind are homestead acts. They cannot, so far as the question now involved is concerned, be distinguished in principle from ordinary laws exempting property of the debtor. *Helfenstein* v. *Cave*, 3 Iowa, 287; *Sparger* v. *Cumpton*, 54 Ga. 359.

The argument of the defendant assumes that the temporary and conditional interest of the wife in the homestead was a permanent right in the property as such. This is a pure assumption, and one certainly not warranted by the construction put by the Supreme Court of Kansas upon the homestead law of that State. *Jenness* v. *Cutter*, 12 Kan. 500; *Anderson* v. *Kent*, 14 Kan. 207. So far as a creditor of the husband is concerned, it depends on the conduct of the debtor and his wife whether the exemption continues. It is not true that the creditor has no right to look to the homestead property. He has a right to look to it and to the contingencies which may subject it to execution. The immunity given is not absolute, but conditional, and upon the conditions the creditor may calculate, as he may upon any other chance in his favor. The homestead may be abandoned, the family may be broken up, or a new homestead may be acquired through other means than the old one. These obvious propositions are left out of sight in the argument which assumes that the creditor can have no rights as against the homestead property, and that the mere fact that the property has been a homestead enables the husband and wife, as against the creditors of the former, to do

with such property what could not be done with the general property of the husband. The intent of the law is not that the exemption shall be continued when the parties put an end to the homestead; not to enable debtors to avoid the burden, yet get the benefit of the law, by conveying the property in such a way that, while it ceases to be homestead, it will be exempt from execution.

It is clear that when a debtor leaves the State whose laws have created the exemption, and with his wife changes his abode, he surrenders the immunity created by the laws of the State that he leaves. The laws of his new residence, which may be very different, now govern. By a provision of the laws of this State, the homestead is subject to attachment and levy of execution "upon all causes of action existing at the time of the acquiring such homestead, except as herein otherwise provided." Wag. Stats. 699, sect. 7. The defendants, intending to abandon their homestead in Kansas, conveyed that property, and, in receiving the deed of the land in controversy, took the conveyance in the name of the wife. They were bound to know that under the laws of Kansas their privilege ceased, and that any homestead acquired here would be subject to the laws of Missouri. If the property now in controversy is to be considered homestead property, it is governed by our laws. If not homestead property, it is the proceeds of property of the husband, acquired with his means, the legal condition of which cannot be affected by the fact that it was purchased with property in which the wife had had a temporary and conditional homestead interest in the State of Kansas. The argument that there was a valuable consideration in law moving from the wife, which, in the absence of fraud on her part, would, so far as she is concerned, support the conveyance, has no foundation, both because she had no estate in the property and because of her intention to leave Kansas, followed as it was by the execution of the purpose. The Missouri property was purchased by the husband and

paid for with his means, and, as he was indebted at the time of its purchase, the inference must be drawn that in procuring the conveyance to be made to his wife, he did so with the design of covering and concealing the property from the plaintiff as a creditor. There was evidence showing that, after the money was paid and the deed delivered, Behrens took measures to keep the arrangement secret, as he anticipated trouble from his creditors, and that he had his goods sent from Kansas in another person's name. Thus, not only as a matter of law, but as matter of fact, may the inference be drawn of intent on his part to hinder and delay his creditors.

What has already been said serves to distinguish this case from *McLaren* v. *Mead*, 48 Mo. 115. The general rule there laid down must govern this case : that where property claimed to be owned by a married woman is purchased and paid for during coverture, she must, in order to protect it from her husband's creditors, show that she paid for it herself, or with her own means, or else the presumption will arise that she purchased it with the means of her husband.

The judgment of the court below dismissing the petition is reversed, and the case is remanded with directions that a decree be entered for the plaintiff. All the judges concur.